Case No. 24-3072

_____

UNITED STATES COURT OF APPEALS OF THE TENTH CIRCUIT

_____

**PAUL GUEBARA**
Plaintiff/Appellant

**vs.**

**KEVIN BASCUE, et al.**
Defendants/Appellees

_____

**OPENING JOINT BRIEF OF APPELLEES**

_____

**No Oral Argument Requested**

_____

**Appeal from the United States District Court
for the District of Kansas**
The Honorable Julie A. Robinson, Judge
District Court Case No.: 5:19-CV-03025-JAR

_____

**Allen G. Glendenning, #12187**
**1321 Main - Suite 300**
**P.O. Drawer 1110**
**Great Bend, Kansas 67530**
**(620) 792-8231 aglenden@wcrf.com**
**Attorneys for Defendants/Appellees**
**Kevin Bascue, Mark**
**Welch, Jeff Orabaugh, Kyle**
**Lawson and Michelle Newsome**

**Brian C. Wright, #12874**
**113 W. 13th Street**
**Hays, KS 67601**
**785-621-4025**
**brian@bcwrightlaw.com**
**Attorney for Defendants/Appellees**
**Finney County Health Dept.,**
**Harold Perkins and**
**Hannah Britt (Douty)**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES ................................................................................ii, iii

TABLE OF PRIOR AND RELATES APPEALS.......................................................... iv

CORPORATE DISCLOSURE STATEMENT ........................................................... iv

STATEMENT OF ISSUES ..................................................................................... 1

STATEMENT OF THE CASE ................................................................................. 1

SUMMARY OF ARGUMENT .................................................................................9

ARGUMENTS AND AUTHORITIES.......................................................................11

    I.     No constitutional right of Plaintiff has been violated............................11

        A. The objective component cannot be established................................11

            1. Not sufficiently serious...........................................................11

            2. No substantial harm.................................................................16

        B. Subjective..................................................................................17

            1. Jail Defendants.......................................................................19

            2. Health Department Defendants.............................................23

    II.    Qualified immunity...............................................................................28

    III.   There is no evidence to support a Monell claim....................................32

CONCLUSION......................................................................................................33

CERTIFICATE OF COMPLIANCE ........................................................................ 33

CERTIFICATE OF DIGITAL SUBMISSION .......................................................... 34

CERTIFICATE OF SERVICE ................................................................................ 35

# TABLE OF AUTHORITIES

## Rules

F.R.C.P 8 ................................................................................................................ 14

F.R.C.P. 12 ............................................................................................................14

## Statutes

## Cases

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ............................................................. 11, 21

*Walton v. Gomez*, 745 F. 3d 405, 429 (10th Cir. 2014) ................................................. 11

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ............................................................. 11

*Mata v. Saiz*, 427 F. 3d 745 (10th Cir. 2005) ........................................................... 11, 17

*Gardiner v. McBryde*, 2020 U.S. Dist. LEXIS 603 *26 (D. Kan. 2020) ...................................... 11

*Gee v. Pacheco*, 627 F. 3d. 1178, 1192 (10th Cir. 2010) ................................................... 12

*Sealock v. Colorado*, 218 F. 3d 1205, 1209 (10th Cir. 2000) ............................................. 12, 16

*Bush v. Doe*, 858 Fed. Appx. 520, 523 (3rd Cir. 2021) .................................................. 12, 22

*Mitchell v. Nobles*, 873 F.3d 869, 876 (11th Cir. 2017) .................................................... 12

*Whitington v. Moschetti*, 423 F. App'x 767, 773 (10th Cir. 2011) ........................................ 13, 30

*Vasquez v. Davis*, 226 F. Supp. 3d 1189, 1207 (D. Colo. 2016) ........................................... 13, 31

*McCleland v. Raemisch*, 2020 U.S. Dist. LEXIS 180233, *21-22 (D. Colo. 2020) ............... 13, 30

*Erikson v. Pardus*, 198 F. App'x 694, 697 (10th Cir. 2006) ............................................. 13

*Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) .................................................. 13

*Erikson v. Pardus*, 551 U.S. 89 (2007) ................................................................. 14

*Kneen v. Zavaras*, 568 Fed. App'x 580 (10th Cir. 2014) ................................................. 14

*Shipps v. Groves*,  2023 U.S. App. LEXIS 10781 *3-4 (10th Cir. 2023) .................................. 16, 17

*Coulthurst v. Campbell*, 2009 U.S. Dist. LEXIS 148826 (D. N.M. 2009) ................................. 21

*Olson v. Stotts*, 9 F. 3d 1475 (10th Cir. 1993) ............................................................. 21

*Perkins v. Kansas Dep't of Corrections*, 165 F. 3d 803, 811 (10th Cir. 1999) ........................... 21

*Reynolds v. Wagner*, 128 F.3d 166, 175 (3rd Cir. 1997) .................................................. 22

*Moya v. Garcia*, 895 F.3d 1229, 1233 (10th Cir. 2018) ................................................... 23

*Hidahl v. Gilpin County Dep't of Soc. Servs.*, 938 F.2d 1150, 1155 (10th Cir. 1991) ................. 28

*Saucier v. Katz*, 533 U.S. 194, 201(2001) .................................................................. 29

*Green v. Post*, 574 F.3d 1294, 1300 (10th Cir 2009) ...................................................... 29

*Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004) .............................................. 29

*Cortez v McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) .............................................. 29

*Alford v. Buchholz*, 2021 WL 168761 at *5-6 (D. Kan. 2021) ........................................... 29

*Reichle v. Howards*, 566 U.S. 658, 664 (2012) ........................................................... 29

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ............................................................ 29

*Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992) ........................... 29

*Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ........................................................... 30

*Pompeo v. Bd. of Regents*, 852 F.3d 973, 981 (10th Cir. 2017) ........................................ 30

*Tolan v. Cotton*, 572 U.S. 650, 657 (2014) ................................................................ 30

*White v. Pauly*, 137 S. Ct. 548, 552 (2017) ............................................................... 30

*Vasquez v. Davis,* 882 F.3d 1270 (10th Cir. 2018) ....................................................... 31

*Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1170-1171 (D. Kan 2016) ................................... 31

## TABLE OF PRIOR AND RELATED APPEALS

There are no prior or related appeals.


## CORPORATE DISCLOSURE STATEMENT

No corporate disclosure statement is required under rule 26.1.

# STATEMENT OF THE ISSUES.

I.    Were defendants deliberately indifferent to a serious need for medical treatment?

    A.    Objective prong.

        1.    Was the alleged medical need sufficiently serious?

        2.    Did Plaintiff suffer substantial harm?

    B.    Subjective Prong- did defendants know of and disregard a serious medical need?

II.    Are defendants entitled to qualified immunity.

III.    Has Plaintiff abandoned any *Monell* Claims

# STATEMENT OF THE CASE [1]

Plaintiff was convicted of first-degree murder in 1983. (Supp. Appx. 142). While he was incarcerated for that murder, he tested positive for Hepatitis-C in 2003. (Supp. Appx. 170). After serving 22 and half years, Plaintiff was paroled. In 2015, Plaintiff again attempted to commit murder and was arrested and lodged in the Finney County jail. On March 21, 2019, following his conviction, Plaintiff was moved from the Finney County Jail to a Kansas Department of Corrections facility.

---

[1] For purposes of summary judgment, factual disputes must be resolved in Plaintiff's favor. Defendants, however, reserve the right to contest any of these facts, should the case proceed beyond this appeal.

(Supp. Appx. 90, 123-124).

When Plaintiff was booked into the Finney County jail in February of 2015, a medical screening form was completed. Plaintiff indicated that he had once tested positive for Tuberculosis but reported no ongoing medical issues. (Supp. Appx. 146-147).

During his incarceration, Plaintiff was seen repeatedly by a variety of healthcare providers for a variety of complaints and conditions. (Supp. Appx. 119 ¶ 3, 153-154). Some of this care was provided by a contract jail nurse but much of it was provided by outside providers, necessitating transporting him outside the jail to public healthcare facilities for testing, examination and treatment. (Id.) During his visits to healthcare providers, Plaintiff was free to discuss any complaint with the healthcare providers for which he wished to be examined or treated. (Supp. Appx. 125 ¶ 6, 128 ¶ 8, 219 ¶ 8).

These transports involved high risk to jailers, healthcare providers and the public because Plaintiff was a convicted murderer, facing the rest of his life in prison for a second attempted murder, had made threats of suicide and was reported to have gang affiliations. (Supp. Appx. 121 ¶ 3).

In addition to the outside visits, Plaintiff was provided medical care by the Finney County Health Department, under contract. (Supp. Appx. 123 ¶ 3).

During his time in the Finney County jail, Plaintiff repeatedly refused offered medical treatment and refused to take prescribed medications. (Supp. Appx. 123 ¶ 4; 121 ¶ 4; 119 ¶ 4; 125 ¶ 9; 159; 109). Specifically, Plaintiff refused medical prescriptions provided for his complaints of stomach pain. (Supp. Appx. 212; 110 c; 124 ¶ 11). On June 27, 2018, Plaintiff submitted a medical request to the jailers stating: "DON'T ORDER MEDS." (Supp. Appx. 208; 124 ¶ 10, 110 c). On October 28, 2018, Plaintiff again requested that prescribed medication not be ordered. (Supp. Appx. 164; 124 ¶ 10; 110 c). Plaintiff made suicidal statements and started a hunger strike, in attempts to force jail staff to move him to a preferred cell. (Supp. Appx. 161, 163, 120 ¶ 8, 110 c).

Plaintiff was repeatedly seen for complaints of stomach pain. (Supp. Appx. 153, 158, 165, 168, 171, 176, 204, 207, 209, 144, 152, 162; Supp. Appx. 124 ¶¶ 10-11). Plaintiff attributed this pain to his medications. (Supp. Appx. 162; 124 ¶ 10). In 2015, he was prescribed Omeprazole and scheduled for a follow up. (Supp. Appx. 209; 124 ¶ 11). Plaintiff was transported to the hospital to be seen for his complaints of stomach pain on September 28, 2015. (Supp. Appx.168; 124 ¶ 11.) A CT scan of Plaintiff's stomach, and blood work, were ordered, and continued Omeprazole was prescribed for his stomach pain. (Id.) The blood work showed positive for the H. Pylori antibody. (Supp. Appx. 173) On September 30, 2015, the lab results were

called to Nurse Newsome and antibiotics – Amoxicillin and Clarithromycin – were prescribed and provided. (Supp. Appx. 158, 176). On October 14, 2015, Plaintiff was again transported to the hospital for the ordered CT scan. The CT scan was reported as showing positive for a hiatal hernia and possible gastritis but negative for mass. (Supp. Appx. 144; 110 c).

A lab report of blood work done in 2015 showed that Plaintiff was "reactive" to the Hepatitis C antibody, but further noted that this only indicated exposure and "Supplemental testing recommended *as clinically indicated*." (Emphasis added). (Supp. Appx. 110 b.7, c; 171). Within a month after the lab report, Plaintiff was seen by Matthew Byrnes, M.D. at St. Catherine Hospital who noted that Plaintiff had Hepatitis C. (Supp. Appx. 203; 109-110). Referencing the Hepatitis-C, Dr. Byrnes stated: "Will just monitor this for now." (Id.)

In 2015, Newsome provided Plaintiff information on Hepatitis-C. (Supp. Appx. 160, 124 ¶ 10).

Plaintiff again reported stomach pain in August of 2017, almost two years after he had been given information about Hepatitis-C, and he stated that this stomach pain had started 3 weeks ago. (Supp. Appx. 206, 124 ¶ 10). In November 2017 Plaintiff submitted an inmate request form inquiring about the new curative treatment for Hepatitis-C. (Appx. 61). This was the first time Plaintiff requested this

treatment. A stool sample was ordered. (Supp. Appx. 152; 110 c). Plaintiff initially refused to provide the ordered stool sample. (Id.). Unfortunately, when Plaintiff finally provided a stool sample, it was lost by the laboratory. (Supp. Appx. 204; 124 ¶ 10). When Plaintiff was advised of this and asked for another sample in January 2018, he again refused to provide the needed sample until April 12, 2018. (Supp. Appx. 207; 124 ¶ 10).

After finally submitting the stool sample that had been ordered, on April 30, 2018, Plaintiff was seen at Genesis for his stomach complaints. The treatment prescribed was the same drug Plaintiff had previously refused to take – Omeprazole. In addition, a CT scan was ordered. (Supp. Appx. 213; 124 ¶ 11).

On May 31, 2018, Plaintiff was again seen at Genesis to discuss the results of his CT scan, his abdominal pain, and other medical issues, including Hepatitis. No medical treatment was prescribed or suggested for Hepatitis. (Supp. Appx. 177; 110 c; 212; 124 ¶ 11).

When Plaintiff demanded another doctor, he was taken to Dr. Kessler on June 25, 2018. (Supp. Appx. 166; 110 c). Dr. Kessler ordered a colonoscopy. (Supp. Appx. 145, 155; 110 c). On September 24, 2018, the colonoscopy was performed and showed gastritis and was otherwise normal. (Id.).

Another CT scan was conducted in September 2018 for Plaintiff's abdominal

pain. The physician's report of that procedure noted that Plaintiff's AST and ALT were mildly elevated but made no recommendation for treatment for the Hepatitis. (Supp. Appx. 210; 110 c.).

On October 26, 2018, Plaintiff was again seen by Dr. Kessler who raised two other possibilities for Plaintiff's reports of stomach pain – the possibility of gallbladder issues and the possibility of "secondary gain". (Supp. Appx. 169; 110 c). Plaintiff was no longer having stomach pain at this time as it had abated after the colonoscopy in September. (Supp. Appx. 35).

People can live with Hepatitis-C for years without significant symptoms or serious damage. (Supp. Appx. 123 ¶ 5; 218 ¶¶ 4-5; 216 ¶¶ 5-6).[2] Thirty percent of people with Hepatitis-C will clear it without medical treatment. (Supp. Appx. 218 ¶ 6). Not everyone with Hepatitis-C will benefit from or should be given from the treatment for which Plaintiff was asking (Supp. Appx. 218 ¶ 7; 216-217 ¶¶ 7-8). Patient selection is important to the success of the treatment plaintiff was requesting. (Supp. Appx. 219 ¶ 8). Once the Hepatitis-C treatment is started, it is detrimental to interrupt it. (Supp. Appx. 219 ¶ 9; 124 ¶ 9). Plaintiff was a poor candidate for the treatment he requested due to his demonstrated non-compliance with medical

---

[2] Plaintiff misrepresents the record in arguing that these affidavits were unsigned. An unsigned version was initially filed but the record was then supplemented with signed affidavits. Plaintiff made no objection to this below. As explained in the arguments below, other objections he made to these affidavits were withdrawn.

advice. (Supp. Appx. 219 ¶ 8; 126 ¶ 8).

While Plaintiff was in the Finney County jail, he was not exhibiting symptoms indicating an immediate need for treatment for Hepatitis-C. (Supp. Appx. 219 ¶ 10; 216 ¶10; 123 ¶ 5).

No healthcare provider advised jail staff that the chronic condition with which Plaintiff had lived for over a decade without serious damage had become serious or required immediate treatment. (Supp. Appx. 123 -124 ¶¶ 5,8; 121-122, ¶¶ 6-7; 119-120 ¶¶ 6-7; 127 ¶ 5; 126 ¶ 7).

No healthcare provider recommended any testing that was not done or that further testing was clinically indicated. (Supp. Appx. 129 ¶ 3).

It was known that Plaintiff would be moved to KDOC upon completion of his criminal case and that the treatment he was requesting would be available to him there without interruption. (Supp. Appx. 124 ¶ 7; 126 ¶ 8).

When Plaintiff arrived at KDOC, he was provided treatment for his Hepatitis-C. (Supp. Appx. 109 a.3). Plaintiff has been cured of Hepatitis-C. (Supp. Appx. 109 a.4). Lab reports after Plaintiff was cured show his AST and ALT values to be well within normal limits.   (Supp. Appx. 174; 109 a. 4.; 110 c).

Sheriff Bascue was not involved in Plaintiff's healthcare. (Supp. Appx. 127 ¶ 3).

It was the policy of the Finney County Sheriff to provide medical treatment that was obviously necessary and to follow the recommendations and advice of inmates' physicians concerning needed treatment. (Supp. Appx. 127 ¶ 7; 125 ¶¶ 4-5). Finney County Jail policies gave authority to the medical personnel to determine what medical consultations and treatment were needed. (Supp. Appx. 125 ¶¶ 3-5; 180).

Sheriff Bascue was never aware or advised that Plaintiff was in need of immediate treatment for Hepatitis C. (Supp. Appx. 127 ¶ 4). Sheriff Bascue did not deny Plaintiff any treatment that was obviously necessary or mandated by a physician. (Supp. Appx. 127 ¶ 6).

Lt. Lawson was never aware or advised that Plaintiff was in need of immediate treatment for Hepatitis C. (Supp. Appx. 120 ¶ 7). Lt. Lawson did not deny Plaintiff any treatment that was obviously necessary or mandated by a physician. (Supp. Appx. 119 ¶ 6).

Capt. Orebaugh was never aware or advised that Plaintiff was in need of immediate treatment for Hepatitis C. (Supp. Appx. 122 ¶ 7). Capt. Orebaugh did not deny Plaintiff any treatment that was obviously necessary or mandated by a physician. (Supp. Appx. 122 ¶ 6).

Mark Welch was never aware or advised that Plaintiff needed immediate

treatment for Hepatitis C. (Supp. Appx. 125-126 ¶¶ 6-8). Mark Welch did not deny Plaintiff any treatment that was obviously necessary or mandated by a physician. (Id.). In fact, Welch spoke with medical personnel at the health department and was advised that it would be best to let the treatment Plaintiff was demanding be provided at the KDOC facility to which he would be sent. (Supp. Appx. 126 ¶ 8).

In response to Plaintiff's request for treatment, Michelle Newsome consulted an APRN, who advised that Plaintiff was not symptomatic and not in need of immediate treatment. (Supp. Appx. 140; 129 ¶ 2). Michelle Newsome was never aware or advised that Plaintiff needed immediate treatment for Hepatitis C. (Supp. Appx. 124 ¶¶ 6-8).

If plaintiff's healthcare providers had recommended the treatment Plaintiff requested, it would have been provided. (Supp. Appx. 126 ¶ 9).

## SUMMARY OF ARGUMENT

Plaintiff's framing of his first issue completely misses the point. It is not Defendant's burden to prove that the treatment plaintiff demanded was "medically inappropriate." Rather it is Plaintiff's burden to prove that he had a serious medical need and that the defendants were "deliberately indifferent" to it, which he wholly failed to do. Plaintiff appears to be under the impression that a mere demand for a particular treatment makes it mandatory, even if no health care provider agrees that

it is needed then, and every provider specifically consulted about it advised against it. But a prisoner's disagreement with the medical judgment of his providers does not rise to the level of constitutional concern. A failure to provide medical care, even if negligent and even if constituting medical malpractice, does not give rise to a constitutional violation.

The existence of a serious medical need is determined objectively. Even though he saw several mid-level providers and physicians, before the trial court the plaintiff adduced no evidence that any medical provider determined that treatment was required. Nor was there evidence that the stomach/abdominal pain was caused by Hepatitis C. In the absence of any shred of such evidence, there was no basis to assume that treatment for Hepatitis C would have helped his stomach or abdominal pain.

"Deliberate indifference" is determined subjectively based on evidence of an official's knowledge of an excessive risk to inmate health and safety, and an apparent disregard of such risk despite the knowledge. The uncontroverted evidence is that no medical provider—including those affiliated with Finney County Health Department and outside physicians—believed it was necessary to treat plaintiff's Hepatitis-C infection while he was at the jail.

The individual defendants are entitled to qualified immunity. At the time

Plaintiff was in the Finney County Jail, it had not been clearly established (and still is not) that failure to provide the treatment Plaintiff demanded constitutes deliberate indifference under the circumstances of this case -- the lack of any medical support for its need and the presence of other factors such as Plaintiff's history of noncompliance with medical treatment and impending transfer to KDOC that made starting the treatment at the Finney County jail inadvisable.

Plaintiff has abandoned any *Monell* claims.

## ARGUMENT AND AUTHORITY

**I.      No constitutional right of Plaintiff has been violated.**

Plaintiff expressly agrees that, for defendants to be liable, they must be shown to have been deliberately indifferent to a serious medical need, and that this standard involves an objective and a subjective component.   *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Walton v. Gomez*, 745 F. 3d 405, 429 (10th Cir. 2014).   Neither component can be established in this case.

**A.      The objective component cannot be established.**

**1.      Not sufficiently serious.**

Regardless of whether this case is analyzed as a case of delay or denial of medical care, the objective component requires "objective evidence that the deprivation at issue was in fact sufficiently serious." *Farmer v. Brennan,* 511 U.S.

825, 834 (1994); *Mata v. Saiz,* 427 F. 3d 745 (10th Cir. 2005); *Gardiner v. McBryde,* 2020 U.S. Dist. LEXIS 603 *26 (D. Kan. 2020). To constitute a "serious medical need," the condition must have been "diagnosed by a physician *as mandating treatment* or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." (emphasis added) *Gee v. Pacheco,* 627 F. 3d. 1178, 1192 (10th Cir. 2010); *Sealock v. Colorado,* 218 F. 3d 1205,1209 (10th Cir. 2000). In this case, no physician mandated treatment of Plaintiff's Hepatitis C while he was in the Finney County Jail, nor was it so obvious that even a lay person would easily recognize the need.

Plaintiff seeks to avoid this clear fact by conflating two separate questions: (1) whether Hepatitis-C itself is a serious *condition* generally and (2) whether a particular patient has a serious need for a particular treatment. His citation to the case law is misleading on this point.

Hepatitis-C *can* be a serious condition and, therefore, the *allegation* of failure to treat Hepatitis-C is sufficient to get past a motion to dismiss. *See Bush v. Doe*, 858 Fed. Appx. 520, 523 (3rd Cir. 2021); *Mitchell v. Nobles*, 873 F.3d 869, 876 (11th Cir. 2017). But at the summary judgment stage, it is incumbent upon Plaintiff to present evidence that *his particular condition* constituted a "serious medical need" at the time he was incarcerated in Finney County. Merely having a diagnosis of Hepatitis-

C, without more, does not meet this burden.

> But persuasive authority from within this District and the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") suggests a diagnosis of chronic Hepatitis-C, without more, does not constitute an objectively serious medical need for purposes of an Eighth Amendment deliberate indifference claim. See, e.g., *Whitington v. Moschetti*, 423 F. App'x 767, 773 (10th Cir. 2011) (concluding Hepatitis-C was not an objectively serious medical need because there was no evidence the plaintiff suffered substantial harm from any delay in treatment); *Vasquez v. Davis*, 226 F. Supp. 3d 1189, 1207 (D. Colo. 2016) (concluding the plaintiff's Hepatitis-C was not an objectively serious medical need before 2006, because there was no evidence he suffered serious complications, aff'd in part, vacated in part on other grounds, 882 F.3d 1270 (10th Cir. 2018).

*McCleland v. Raemisch*, 2020 U.S. Dist. LEXIS 180233, *21-22 (D. Colo. 2020).

Plaintiff cites an unpublished decision – *Erikson v. Pardus,* 198 F. App'x 694, 697 (10th Cir. 2006) – for the proposition that Hepatitis-C is a "serious medical problem."  But read on:

> Hepatitis C is unquestionably a serious medical problem. However, the Eighth Amendment issue in this case is not whether the Hepatitis C infection itself is a "serious medical need." See Bender v. Regier, 385 F.3d 1133, 1137 (8th Cir. 2004) ("[T]he Eighth Amendment issue is not whether the infection itself is a 'serious medical need,' but rather whether [plaintiff] had a serious medical need for prompt interferon treatment.").[3]

*Ibid.* The district court in that case dismissed Erikson's claim for failure to adequately allege a need for the treatment at the relevant time. Although Plaintiff

---

[3] This was a quote from the magistrate's recommendation, with which the Tenth Circuit agreed.

fails to note it in his brief, that decision was appealed to the United States Supreme Court, which reversed and remanded, finding that the allegations of the Complaint were sufficient to satisfy F.R.C.P. 8. *Erikson v. Pardus,* 551 U.S. 89 (2007). But *Erikson*, like the others cited above, dealt with a motion under F.R.C.P. 12 based solely on allegations.

Plaintiff also cites *Kneen v. Zavaras,* 568 Fed. App'x 580 (10th Cir. 2014). But in that case, the objective component was not at issue and the case provides no support for any position on that issue.

The uncontroverted evidence in this case supports the holdings in the cases cited by the defendants. The mere fact that one is diagnosed with Hepatitis-C, does not mean that there is an *immediate* need for treatment. Thirty percent of people with Hepatitis C will clear the disease without medical treatment. A person with Hepatitis C can live for a long time without symptoms or damage.

Not everyone who has Hepatitis C will benefit from treatment. Patient selection for treatment is important to the success of the treatment demanded. One of the factors is whether the patient has a history of non-compliance with medical care. Plaintiff has a significant history of non-compliance. Another factor in determining the need for immediate treatment is that, once the treatment has begun, it is detrimental to interrupt it. It is better to wait to begin it at a time when it cannot

be interrupted. The move from Finney County to KDOC could have resulted in an interruption that was avoided by waiting to start the treatment until Plaintiff arrived at the KDOC facility.

Thus, Plaintiff must show more than that he had Hepatitis C. Plaintiff must show that a physician mandated a need for the treatment or that it should have been obvious to a layman. Plaintiff cites to no evidence in the record sufficient to support either proposition, because there is none. The only evidence in the record negates both.

Plaintiff's physicians were aware of Plaintiff's Hepatitis-C diagnosis but mandated no treatment for it, indicating instead that this condition would just be monitored. Medical personnel advised the jailers and Nurse Newsome that Plaintiff was not exhibiting symptoms indicating a need for immediate treatment. An APRN specifically consulted on the question by the jail nurse advised that, because he was not symptomatic, the treatment Plaintiff was requesting could wait until he arrived at the KDOC facility where it could be administered under existing protocols without interruption.

Plaintiff designated no medical experts to establish a need for immediate treatment. The only evidence in the record on that issue indicates that there was no need for immediate treatment.

Thus, Plaintiff's chronic and non-symptomatic Hepatitis-C was not a "serious medical condition" while he was in the Finney County Jail.

### 2.    No substantial harm.

When a case involves a delay rather than a denial of medical treatment, the objective prong requires a showing that Plaintiff suffered "substantial harm" as a result of the delay. "'If the claim alleges inadequate or delayed medical care, the prisoner must show that the delay in treatment resulted in "substantial harm.' *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)". *Shipps v. Groves*, 2023 U.S. App. LEXIS 10781 *3-4 (10th Cir. 2023).

Plaintiff points to no evidence in the record indicating that he suffered substantial harm because of the delay in receiving the curative treatment. The closest he comes is to point to a fibrosis score on a test in 2019 - after he was no longer in Finney County. But there is no medical testimony offered to suggest such a finding shows substantial harm occurred during his time in Finney County. It is uncontroverted that he had been living with Hepatitis C since at least 2003 – long before his relevant stay in the Finney County Jail – and that he was not symptomatic. There is no evidence to indicate his condition changed at all – let alone in a substantially harmful way – during the delay.

Plaintiff's argument is that the question of "substantial harm" is not applicable

because this case is a case of denial rather than delay.   But it is a case of delay, not denial.   A decision was made that, due to his documented and serious lack of compliance with medical treatment and the need to avoid interruption of the treatment because of the impending move to KDOC, it would be best to wait until that move was completed.

But even if Plaintiff was not required to show substantial harm, The other reasons set forth herein establish that summary judgment should be affirmed.

## B.    Subjective.

Even if it is assumed that Plaintiff's Hepatitis-C was a serious condition that should have been treated while he was in Finney County, there is no evidence that the jailers knew that and disregarded it.   "A prison official acts with deliberate indifference only if he knows that the inmate is facing "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.". . . *Mata,* 427 F. 3d at 751.   Accordingly, not every claim of inadequate prison medical treatment violates the Eighth Amendment.   *Estelle* recognized that a prison official is not liable under the Eighth Amendment if his mental culpability falls short of deliberate indifference. 429 U.S. at 105-06."   *Shipps v. Groves,* 2023 U.S. App. LEXIS 10781 *3-4 (10th Cir. 2023).

In the recitation of facts in his brief to this Court, plaintiff's counsel

incorrectly asserted that plaintiff "repeatedly requested treatment over the years." For this proposition, the cited references are pages 85 and 102 of appellant's appendix. Both of those documents are dated January 2018; the plaintiff provides no proof of a request made in 2015, 2016, or 2017. The first note in the record of a request for treatment is November 10, 2017. In their factual contentions in the pretrial order, none of the parties asserted the plaintiff had requested treatment in 2015.

Thus, the time frame at issue is—at most—the time between November 2017 and the date Plaintiff was transferred to KDOC. The affidavits of Hannah Britt, Michelle Newsome and Dr. Perkins, proved key uncontroverted facts 52, 53 and 54. (Appx. 178). Plaintiff never objected to fact 52 (it is detrimental to interrupt treatment) at all. His only objection to fact 53 was to the submission of the Perkins affidavit after the pretrial conference, an objection later withdrawn. His only objection to fact 54 was that "the exhibits provided speak for themselves." But this does not controvert or establish a controverted fact regarding the need for treatment. There was no objection to fact 55, that an outside specialist (Dr. Kessler) saw him to evaluate the Hepatitis, but no treatment was suggested or ordered by that provider. (Appx. 179).

In his opening brief, plaintiff objects to the part of Newsome's affidavit that

says: "In response to Plaintiff's request for treatment, Michelle Newsome consulted APRN Gretchen Dowdy, who advised that Plaintiff was ***not symptomatic and not in need of immediate treatment***." Plaintiff asserts Dowdy's statements are hearsay, and thus inadmissible. Not only was this argument not presented below and, therefore waived, it is wrong. The point of this evidence is that it was said to the jail defendants. It is not offered to prove the truth of that assertion, but to show a lack of deliberate indifference because it was the information provided to the defendants.

## 1. Jail Defendants.

All any of the jail defendants knew was that Plaintiff had a diagnosis of Hepatitis-C, and some of them knew that he wanted a particular treatment. None of them knew of any medical support for Plaintiff's demand – because there was none.

Plaintiff argues that no evidence of the jail policy on medical treatment was presented. But it was. It was the policy of the Finney County Sheriff to provide medical treatment that was obviously necessary and to follow the recommendations and advice of inmates' physicians concerning the treatment needed. Authority was provided to the medical personnel to determine medical treatment needed. If any healthcare provider had recommended treatment or testing for Plaintiff, it would

have been provided.

Sheriff Bascue was not involved in Plaintiff's healthcare and was never aware of any need for treatment. Jail Administrator Welch, Capt. Orebaugh and Lt. Lawson were never advised that Plaintiff needed treatment. Welch consulted the medical personnel at the health department and was advised that it was better to let the treatment be provided at the KDOC facility where it could be provided without interruption. To the extent that he was aware of a potential for harm, he did not disregard it. He sought and followed medical advice. Nurse Newsome was not aware that Plaintiff needed immediate treatment at the Finney County jail. To the extent she was aware of a potential need, she did not disregard it. She discussed Plaintiff's request for treatment with the APRN who advised that it was not an immediate need. None of the jail personnel or Nurse Newsome denied any treatment recommended by any healthcare provider.

Plaintiff presents no evidence to contradict any of this. Instead, he picks at the affidavits by complaining that they do not contain sufficient detail. But this does not contradict them. Plaintiff could have deposed the defendants and obtained any detail he desired. It is plaintiff's burden to show deliberate indifference and this nitpicking of the only evidence in the record on the point does not meet that burden.

The jailers are not medical personnel, and they did what the law requires of

them – they followed the recommendations of Plaintiff's healthcare providers. Plaintiff was given access to physicians who were aware of his Hepatitis-C diagnosis.

Plaintiff appears to be under the impression that his mere demand for a particular treatment makes it mandatory, even if no health care provider agrees that he needed it then, and every provider specifically consulted about his request advised against it. But a prisoner's disagreement with the medical judgment of his providers does not arise to a claim of constitutional dimensions. *Coulthurst v. Campbell,* 2009 U.S. Dist. LEXIS 148826 (D. N.M. 2009); *Olson v. Stotts,* 9 F. 3d 1475 (10th Cir. 1993). A failure to provide medical care, even if negligent and even if constituting medical malpractice, does not give rise to a constitutional violation. *Perkins v. Kansas Dep't of Corrections,* 165 F. 3d 803, 811 (10th Cir. 1999); *Estelle v. Gamble,* 429 U.S. 97, 104-106 (1976). The mere fact that Plaintiff requested a treatment that was available but was not provided does not show deliberate indifference when there is no medical indication of a need for the treatment at the time it was demanded and, in fact, there was medical indication that it would not be a good idea to begin the treatment prior to transfer to the KDOC facility.

Plaintiff points to two lab reports that contain the language that further testing was recommended or needed as or if "clinically indicated." But no provider who

reviewed those reports suggested that the further testing was clinically indicated or ordered it. All of them who specifically addressed Plaintiff's Hepatitis-C indicated they would just monitor it or specifically recommended against starting the treatment at the Finney County jail.

The treatment Plaintiff was demanding is expensive and, Plaintiff claims that he was told that cost was a factor in the decision. For purposes of this appeal, Plaintiff's testimony may be accepted as true, but it does not show deliberate indifference. Everyone, incarcerated or not, must consider the cost of medical treatment in deciding whether and when it will be received. Being incarcerated does not free Plaintiff from such considerations:

> Defendants allegedly delayed treating Bush's Hepatitis C for a non-medical reason: cost. To be sure, "the deliberate indifference standard of *Estelle* does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society." *Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997).

*Bush v. Doe*, 858 Fed. Appx. 520, 523 (3rd Cir. 2021).

This was a relatively new treatment, with which jailers, particularly those in rural parts of the country, were not familiar. There was no apparent or medically documented need to administer the treatment immediately. Plaintiff was not a good candidate due to his non-compliant and resistive behavior. It would have been detrimental to have started the treatment only to have it interrupted. Under these

circumstances, considering the cost as one factor is not indicative of deliberate indifference, especially when no physician is suggesting immediate treatment or stating that a delay would be medically problematic.

Moreover, Plaintiff's testimony is that he was told that cost was a factor. He does not provide any evidence that will meet his burden of establishing which, if any, of the individual defendants actually made a decision to deny the treatment because of the cost. It is the plaintiff's burden to prove individual involvement of a particular defendant. *Moya v. Garcia*, 895 F.3d 1229, 1233 (10th Cir. 2018). A hearsay statement indicating that cost was a factor in some unidentified person's mind does not establish deliberate indifference at all. It certainly does not establish deliberate indifference by any identifiable individual defendant.

## 2. Health Department Defendants.

In the trial court, defendants established that no one believed treatment was mandatory. Plaintiff, on appeal, attempts to sidestep the total absence of evidence to support his claim that the treatment was medically needed by attacking the evidence that shows the opposite.

Plaintiff objected to the defendants' production of affidavits of Michelle Newsome, Hannah Britt, and Dr. Perkins because they were submitted after discovery was completed. He claimed it was objectionable that they were created in

response to his motion for summary judgment. He seemed to think that this "late" submission entitled him to re-open discovery, because he thought the affidavits were based on discovery conducted after the final Pretrial Conference.

He soon withdrew those objections (Supp. Appx. 220), as FCHD noted in its reply brief (Supp. Appx. 222). He never raised an objection that these affidavits contain hearsay that was inadmissible. As it stood when briefing was complete, there was no objection to the Britt, Newsome, or Perkins affidavits.

A party may not raise such objections for the first time on appeal when they were not presented to the trial court for determination. In short, plaintiff waived any objection to the statements of Gretchen Dowdy, APRN quoted by Michelle Newsome in her affidavit.

When he withdrew his objections to the Dowdy, Britt, and Perkins affidavits, Plaintiff summarized his other responses to the uncontroverted facts asserted by defendants based on all the medical providers' affidavits. He asserted they were "self-serving" and "contrary to previous claims." (Supp. Appx. 220). However, even understanding that pleadings submitted by a pro se prisoner plaintiff should be given a liberal interpretation, he still failed to specify the source or content of the evidence with which he purported to controvert the statements of fact.

Plaintiff's new attorney attempts to rectify the situation by amplifying a

previously vague, unsupported "credibility" attack, asserting a new argument that seeks to diminish the credibility of the statement attributed by Michelle Newsome to Gretchen Dowdy. Plaintiff strongly implies that Ms. Dowdy avoided her obligations to respond after being served with the lawsuit, and that her "scofflaw" status renders her statement unbelievable and inadmissible.

This argument is clearly a red herring in this context. The jailers obviously had no foreknowledge of how Ms. Dowdy would react to a future lawsuit and that fact has no bearing on the jailer's reliance on her medical advice before this lawsuit was filed.

Moreover, it is entirely unfounded, because there is no evidence that Dowdy was ever served with the lawsuit. A brief review of the service issues will explain that nothing nefarious happened.

In its order of July 5, 2022 (Supp. Appx. 156), after briefing regarding whether the FCHD defendants had been properly served, the District Court made findings that FCHD was not served because certified mail addressed to it was not signed for by anyone affiliated with FCHD. The district court also found that Ms. Dowdy was not employed by FCHD when service was attempted, and therefore Dowdy had not been properly served. *Ibid.* Process was not delivered to her dwelling house or abode. Due to its concerns about the failure of the US Postal Service to obtain a

signature from anyone at FCHD, the district court ordered the marshals to use Federal Express and not the Postal Service. Pursuant to the order, Federal Express was required to use a delivery receipt showing the person to whom it was delivered. No signature requirement was included in the Court's order. *Ibid.*

Counsel for FCHD was ordered to, and did, file under seal the last known home address for Ms. Dowdy. *Ibid.* On July 20, 2022, FCHD filed a notice stating that it had no current mailing address for Ms. Dowdy. (Supp. Appx. 77). The address contained in this filing remains under seal, but it was used by the marshals that same day (Supp. Appx. 105) to prepare a package for Federal Express to deliver to 2924 Squire Pl., Garden City, KS 67846. This package was "returned executed" but did not specify that Dowdy received the papers.

Most importantly, after the clerk entered default, the clerk's notice of that default finding was sent to the same address (2924 Squire Pl. in Garden City) and the court file reveals that it ***was returned undelivered at that address***.

Considering this series of events, this Court should not assume that Gretchen Dowdy was properly served. FCHD had already told the court Ms. Dowdy had not been employed by FCHD since 2018, some four years before it submitted the last known address for the former employee. Even after the remoteness of Dowdy's employment was revealed it, the district court nevertheless ordered FCHD to provide

the last known address. FCHD provided it. A Federal Express envelope was left at that address, but no signature was obtained. (Supp. Appx. 204).

The district court never formally considered entering a default judgment. In its order (Appx. 56), the district court acknowledged it had not made findings about the possibility of default judgment. The court found the plaintiff's motion for default judgment was premature, reserving for the plaintiff the right to move for default judgment after his other claims have been resolved. *Ibid.*

Thus, jumping to the conclusion that Gretchen Dowdy willfully ignored her obligation to participate in the lawsuit is entirely without factual basis. There is simply no evidence upon which to conclude that she ever received notice of the lawsuit. Of course, it is possible that she knew of, and defiantly refused to participate in, the suit. But the evidence in the record supports no such conclusion and points strongly to lack of notice as the explanation for her nonparticipation. Thus, there is no evidence of noncompliance with court proceedings. Nor is there anything else in this record upon which to base an attack on her credibility. Plaintiff has nothing with which to impeach the credibility of her statement to Newsome that plaintiff did not have Hepatitis-C symptoms or need Hep-C treatment in late 2017.

Even if it was unacceptable or inappropriate for the District Court to rely upon the out-of-court statement attributed to Gretchen Dowdy, the trial court's decision

was not based solely on the statement attributed to Gretchen Dowdy. It was also based on other uncontroverted evidence, such as the facts that plaintiff was free to discuss his medical situation with any provider at any time, and that he was seen by a specialist (Dr. Kessler) approximately eight months after his November 2017 request for treatment. It is uncontroverted that Dr. Kessler did not recommend treatment for Hepatitis C.

There simply is no evidence in the record to support a conclusion that the FCHD defendants were deliberately indifferent.

## II.    Qualified immunity

Regardless of the outcome of the issues discussed above, the individual defendants are entitled to summary judgement based on qualified immunity. Plaintiff did not effectively contest this issue in the district court and the arguments he raises for the first time on appeal, even if considered, fall far short of showing that it was clearly established in the Tenth Circuit before 2019 that Plaintiff was entitled to the treatment he was demanding, even when he was not symptomatic, no medical professional was mandating the treatment and, in fact they indicated there were good reasons to delay the treatment until Plaintiff arrived at KDOC.

There is a presumption in favor of qualified immunity for public officials acting in their individual capacities, unless the Plaintiff proves otherwise. *See Hidahl*

*v. Gilpin County Dep't of Soc. Servs.*, 938 F.2d 1150, 1155 (10th Cir. 1991).

Once a qualified immunity defense is asserted, the burden shifts to the Plaintiff to meet a two part test. *Saucier v. Katz,* 533 U.S. 194, 201(2001); *Green v. Post,* 574 F.3d 1294, 1300 (10th Cir. 2009). Plaintiff must establish that an individual defendant violated a constitutional right. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). Even then qualified immunity bars the claim unless Plaintiff also shows that the violated right was clearly established. *Cortez* v *McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007).

Whether a right is clearly established is examined under the "specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. A right is clearly established if "every reasonable official would have understood what he is doing violates" the constitutional right at issue. *Alford v. Buchholz,* 2021 WL 168761 at *5-6 (D. Kan. 2021) (quoting *Reichle v. Howards,* 566 U.S. 658, 664 (2012); *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). For this to be the case "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the Plaintiff maintains." *Cortez*, 478 F.3d at 1114-15 (citing *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)).

In defining the allegedly clearly established right at issue, the Court must not

define the right at too high a level of generality. *Mullenix*, 136 S. Ct. at 308.   That is because general propositions of law are "of little help in determining whether the violative nature of particular conduct is clearly established." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).   Instead, the Court is tasked with defining the clearly established right at issue by looking at the specific context of the case.   *Pompeo v. Bd. of Regents*, 852 F.3d 973, 981 (10th Cir. 2017) (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)).   In other words, "the clearly established law must be 'particularized' to the facts of the case."   *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Otherwise, plaintiffs would be able to render the defense of qualified immunity essentially toothless by always alleging the violation of extremely abstract rights. *Id.*

The first prong is addressed above – Plaintiff cannot establish the elements of his claim of a violation of his constitutional rights by deliberate indifference to a serious medical need.

Plaintiff has not and cannot point to any applicable case law before 2019 that made it clear to every jailer that it would violate the 8th amendment to fail to give an inmate with chronic Hepatitis the treatment he was demanding, when he wanted it.

Tenth Circuit precedent taught officers in Defendants' position before 2019 that Hepatitis-C that is not symptomatic and that has not been shown to have resulted in substantial harm is not a serious medical need.   *McCleland v. Raemisch*, 2020

U.S. Dist. LEXIS 180233, *21-22 (D. Colo. 2020) (citing *Whitington v. Moschetti*, 423 F. App'x 767, 773 (10th Cir. 2011) (concluding Hepatitis-C was not an objectively serious medical need because there was no evidence the plaintiff suffered substantial harm from any delay in treatment); *Vasquez v. Davis*, 226 F. Supp. 3d 1189, 1207 (D. Colo. 2016), aff'd in part, vacated in part on other grounds, 882 F.3d 1270 (10th Cir. 2018) (concluding the plaintiff's Hepatitis-C was not an objectively serious medical need before 2006, because there was no evidence he suffered serious complications).

> Under these circumstances, the court finds that plaintiff fails to establish an Eighth Amendment claim. Defendants clearly acknowledge that plaintiff had a serious condition that was continuously monitored through clinic visits and lab tests. Plaintiff fails to establish that defendants were deliberately indifferent under both an objective and subjective analysis. First, there is no evidence of a deprivation that was sufficiently serious to meet the objective component. The care providers recognized plaintiff's condition and provided ongoing monitoring. Second, there is no evidence of defendants knowingly disregarding risk to plaintiff's health.

*Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1170-1171 (D. Kan 2016).

Plaintiff's response to this Tenth Circuit authority is to offer, for the first time on appeal, cases from other jurisdictions discussing Hepatitis-C, all of which were decided after Plaintiff had left the Finney County Jail and was at KDOC being treated. (See Applt's Brief, pp. 13-15).

These defendants are, therefore, entitled to qualified immunity on the second

prong alone.

## III.    There is no evidence to support a *Monell* claim.

Plaintiff makes no attempt in his brief to argue that he has a viable *Monell* or supervisory claims.   He has, therefor, abandoned any such claims and that part of the judgment below must be affirmed.

## CONCLUSION

Plaintiff was provided medical care - lots of it.   He was not provided one thing he demanded. But that was because it was not medically indicated and, in fact, the medical providers recommended against it.   Following that advice is simply not a violation of Plaintiff's constitutional rights.

The district court's judgment should be affirmed.


WATKINS CALCARA, CHTD.

/s/ ALLEN G. GLENDENNING
        Allen G. Glendenning, #12187
        1321 Main Street - Suite 300
        P.O. Drawer 1110
        Great Bend, Kansas   67530
        (620) 792-8231    Fax (620) 792-2775
        aglenden@wcrf.com
        Attorneys for Kevin Bascue, Mark

Welch, Jeff Orabaugh, Kyle Lawson and Michelle Newsome

Wright Law Office, Chtd.

/s/ Brian C. Wright
     Brian C. Wright, #12874
     113 W. 13th Street
     Hays, KS 67601
     785-621-4025
     brian@bcwrightlaw.com
     Attorney for Finney County Health
     Dept., Harold Perkins and Hannah
     Britt (Douty)

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and the word limit of Fed. R. App. P. 32(a)(7)(c) because:

    [ ] this document contains 7226 words, and

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ ] this document has been prepared in a proportionally spaced typeface using Word Perfect 2021, in Times New Roman size 14.

Date: October 23, 2024          WATKINS CALCARA, CHTD.

                    /s/   ALLEN G. GLENDENNING
                        Allen G. Glendenning, #12187
                        1321 Main - Suite 300
                        P.O. Drawer 1110
                        Great Bend, KS 67530

(620) 792-8231
aglenden@wcrf.com
Attorneys for Defendants/Appellees
Kevin Bascue, Mark Welch, Jeff
Orabaugh, Kyle Lawson and Michelle
Newsome

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing Appellees' Opening Brief:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, {eset Endpoint Security, 11.1.2052.0, 8/1/2027}, and according to the program are free of viruses.

/s/   ALLEN G. GLENDENNING
Allen G. Glendenning, #12187

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2024 I electronically filed the foregoing Appellees' Joint Opening Brief using the court's CM/ECF system which will send notification of such filing to all counsel of record:

Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW #26152
Washington, DC 20001
202-455-4399
sam@rightsbehindbars.org
Counsel for Plaintiff-Appellant

Brian C. Wright, #12874
113 W. 13th Street
Hays, KS 67601
785-621-4025 brian@bcwrightlaw.com
Attorney for Finney County Health
Dept., Harold Perkins and Hannah
Britt (Douty)

WATKINS CALCARA, CHTD.

/s/ ALLEN G. GLENDENNING
 Allen G. Glendenning, #12187
 1321 Main Street - Suite 300
 P.O. Drawer 1110
 Great Bend, Kansas 67530
 (620) 792-8231 Fax (620) 792-2775
 Aglenden@wcrf.com
 Attorneys for Defendants/Appellees
 Kevin Bascue, Mark, Welch, Jeff
 Orabaugh, Kyle Lawson and Michelle
 Newsome